IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION (ABINGDON)


IN RE:  YELLOW POPLAR LUMBER     )
 COMPANY,                         )      Case No. 13-07026
                                  )
           Debtor.            )

-----------------------------------------------------------------------------------------------------------

PLUM CREEK TIMBERLANDS, L.P.,    )
                                  )
                Plaintiff,        )
                                  )
                                  )
v.                                       )
                                  )
YELLOW POPLAR LUMBER         )
 COMPANY, INC., et al,          )
                                  )
           Defendants.      )

-----------------------------------------------------------------------------------------------------------

RANGE RESOURCES–PINE        )
 MOUNTAIN, INC.,              )
                                  )
           Counterclaim Plaintiff,    )
                                  )
v.                                       )
                                  )
PLUM CREEK TIMBERLANDS, L.P.,    )
                                  )
           Counterclaim Defendant.   )

<u>RESPONSE OF RANGE RESOURCES–PINE MOUNTAIN, INC.
TO MOTION TO DISMISS COUNTERCLAIM</u>

Defendant and counterclaim plaintiff Range Resources–Pine Mountain, Inc. ("Range"), by counsel, submits this response to the motion filed by Plum Creek Timberlands, L.P. ("Plum Creek") to dismiss Range's counterclaim.

I.    INTRODUCTION

This case involves the ownership of the gas on 3,877.5 acres of land in Buchanan County, Virginia.  The parties agree that Yellow Poplar Lumber Company ("Yellow Poplar") acquired the gas estate on this land in 1905.  The question is what became of it.  There are at least four possible answers to this question.

1.    Yellow Poplar conveyed the gas to Big Sandy Fuel Corporation ("Big Sandy") by deeds made in 1924 and 1925 before Yellow Poplar's bankruptcy in 1928.  This is why there is no mention of the asset in the bankruptcy case.  In its counterclaim, Range claims the gas as successor in title to Big Sandy.

2.    Yellow Poplar did not convey the gas to Big Sandy but continued to own it at the time of its bankruptcy even though the gas was not listed as an asset.  In its amended complaint, Plum Creek contends that the trustee conveyed the gas to W. M. Ritter Lumber ("Ritter") under a catchall provision in a deed made during the bankruptcy proceeding.  As

3

successor in title to Ritter, Plum Creek claims the gas (as well as 1000 acres

of surface) under this theory.

3.    In the bankruptcy case, the trustee conveyed a 1000 acre tract

to C. G. Jackson.  By virtue of this deed, the successors in title to C. G.

Jackson claim the gas on this 1000 acre tract as well as the surface of the

tract.

4.    Yellow Poplar and the bankruptcy trustee did not convey the

gas to anyone.  Under this theory, the gas either remains an asset of the

bankruptcy estate or it was abandoned to the debtor.

In removing the case from state court, Range is asking this Court to answer these

ownership questions once and for all.

Plum Creek has filed a motion to dismiss Range's counterclaim on two

grounds.  First, Plum Creek contends that the Court lacks subject matter jurisdiction.

Fed. R. Civ. P. 12(b)(1).  Plum Creek contends that the Court lacks jurisdiction over the

counterclaim because, in Plum Creek's view, there was no jurisdiction for the removal.

As Range explains in its response to the motion to remand, however, the Court has

jurisdiction under 28 U.S.C. § 1334.  Therefore, the Court can decide both Plum Creek's

claims and Range's counterclaim.

Plum Creek also contends that the counterclaim fails to state a claim under

Rule 12(b)(6).  Plum Creek asks the Court to decide the merits of Range's claim without

the benefit of any discovery or evidence.  While Plum Creek may disagree with Range's

4

claim, a 12(b)(6) motion is not an appropriate vehicle for resolving it.  Range has

unquestionably stated a plausible claim.  The Court can only decide ownership after

hearing the evidence on all the different theories and weighing the validity of each one.

The Court is not permitted to do that in the context of a 12(b)(6) motion.  Therefore, the

motion to dismiss must be denied.

II.    STANDARD OF REVIEW

A 12(b)(1) motion to dismiss for lack of subject matter jurisdiction cannot

be granted where the federal courts have been given the power and the authority to hear

and resolve the claims.  *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448,

452 (4th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91

(1998)).  It is true that the burden of proof is on the party asserting subject matter

jurisdiction, but where, as here, the 12(b)(1) motion asserts that the complaint fails to

allege facts upon which subject matter jurisdiction can be based, the party asserting

jurisdiction is afforded the same procedural protections as it would receive for a 12(b)(6)

motion – all alleged facts are taken as true, and the motion must be denied if the

complaint alleges sufficient facts to invoke subject matter jurisdiction.  *Kerns v. U.S.*, 585

F.3d 187, 192 (4th Cir. 2009); *McCracken v. Black Diamond Co.*, No. 1:11-cv-73, 2012

U.S. Dist. LEXIS 63096, at *5 (W.D. Va. May 6, 2012).

Likewise, in ruling on a 12(b)(6) motion to dismiss for failure to state a

claim, a court must accept as true all of the factual allegations contained in the pleading

and draw all reasonable inferences in favor of the the party opposing the motion.

5

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir.

2012); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.

2011). In order to survive such a motion, the pleading need only contain sufficient facts

to state a claim that is plausible on its face. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).

With its memorandum in support of its motion to dismiss, Plum Creek

attached copies of several of the deeds cited by Range in its counterclaim. Plum Creek

states that the Court can take judicial notice of these deeds. Memorandum at 3 n.1.

Normally, however, a court does not consider matters outside the pleading in deciding a

motion to dismiss. *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006).

But a court can consider "official public records, documents central to plaintiff's claim,

and documents sufficiently referred to in the complaint so long as the authenticity of

these documents is not disputed." *Id.*; *see Daggy v. Staunton City Schs.*, No. 5:04-cv-23,

2004 U.S. Dist. LEXIS 25188, *6 n.3 (W.D. Va. Dec. 13, 2004); *Gasner v. Cnty. of

Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *see also Link v. Bakshi*, 539 F.

Supp. 2d 846, 848 n.3 (W.D. Va. 2008).

In this case, Range agrees that in deciding the motion to dismiss the Court

may consider the deeds and bankruptcy proceeding cited in the pleadings. Range does

not agree, however, to converting the motion to dismiss into a motion for summary

judgment. The normal standard of review for motions to dismiss should continue to

apply at this stage of the case.

6

### III.   ARGUMENT

   A.   *The Court Has Subject Matter Jurisdiction Over the Counterclaim.*

The Court has jurisdiction of the counterclaim under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  A core proceeding is one that invokes the Court's "arising under" or "arising in" jurisdiction.  28 U.S.C. § 157(b)(1).  A determination of whether an asset is or is not part of the bankruptcy estate is a core proceeding.  *Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 29 (S.D.N.Y. 2012); *Olivie Dev. Group LLC v. Ki Chang Park*, No C11-1691Z, 2012 U.S. Dist. LEXIS 60299, at *10-11 & n.2 (W.D. Wash. Apr. 30, 2012); *Pension Benefit Guaranty Corp. v. Continental Airlines, Inc.* (*In re Continental Airlines)*, 138 B.R. 442, 445 (D. Del. 1992); *Willcox v. Stroup (In re Willcox)*, 329 B.R. 554, 562 n.10 (Bankr. D.S.C. 2005), *rev'd on other grounds*, 358 B.R. 824 (D.S.C. 2006).  Range's counterclaim will determine whether the gas on 3877.5 acres was or was not part of the bankruptcy estate.

The Court also has jurisdiction under § 1334(b) if, at a minimum, the counterclaim is "related to" the Yellow Poplar bankruptcy proceeding.  In the Fourth Circuit, "related to" jurisdiction is broadly interpreted.  *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) (quoting *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 403 (4th Cir. 1992)).  In *Valley Historic*

7

*Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836-37 (4th Cir. 2007), the Court of Appeals set forth the rule for determining whether an action is "related to" a closed bankruptcy case. The Court held that any proceeding with a "close nexus" to the closed bankruptcy case is "related to" that case. *Id*. Under this inquiry, matters that affect the interpretation, implementation, consummation, execution, or administration of the orders entered in bankruptcy will typically have the required nexus. *Id*.

In this case, the counterclaim asks the Court to determine that the gas estate on the property at issue never became property of Yellow Poplar's bankruptcy estate, and that the deeds and orders entered in the bankruptcy proceeding did not convey the gas estate to others. The outcome of the action will have an impact on the interpretation, execution, and administration of orders and the estate in the bankruptcy proceeding. The counterclaim will determine whether the gas was ever property of the estate. There is a "close nexus" between this dispute and the closed bankruptcy proceeding, and this action is – at a minimum – "related to" it.

For the reasons discussed above, the Court has jurisdiction over Range's counterclaim under 28 U.S.C. §§ 1334(b) and 157. Because the Court has independent jurisdiction over the counterclaim under 28 U.S.C. § 157, it is not necessary for the Court to decide whether it has supplemental jurisdiction over the counterclaim under 28 U.S.C. § 1367. Although there is a split of authorities on this issue, the more persuasive cases have concluded that a bankruptcy court has supplemental jurisdiction. *See, e.g., Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194-95 (9th Cir. 2005); *Calvary*

8

*Constr., Inc. v. WDF, Inc. (In re Cavalry Constr., Inc)*, No. 09-CV-5123, 2013 U.S. Dist.

LEXIS 68527, at \*13-16 (S.D.N.Y. May 13, 2013); *Hospitality Ventures/Lavista v.*

*Heartwood II, L.L.C. (In re Hospitality Ventures/Lavista)*, 358 B.R. 462, 466-67 (Bankr.

N.D. Ga. 2007); *In re Burgess*, No. 05-12813-SSM, 2007 Bankr. LEXIS 142, at \*7 n.3

(Bankr. E.D. Va. Jan. 12, 2007); *but see Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562,

572 (5th Cir. 1995); *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703,

713 (Bankr. W.D. Va. 2009); *see generally Tavenner v. Morton (In re Banks)*, No. 07-

03157-DOT, 2010 Bankr. LEXIS 682, \*18-20 (Bankr. E.D. Va. Mar. 4, 2010)

(discussing cases).

      **B.**   *Range Has Stated a Plausible – Indeed, a Compelling –*
          *Claim for Relief.*

         1.   Yellow Poplar Is a Common Source.

All parties to this case trace their titles to Yellow Poplar. Yellow Poplar

acquired the property by deed dated January 5, 1906, and recorded in Buchanan County

Deed Book 30, page 226. See Counterclaim, ¶¶ 13-14. A copy of this deed is attached as

Exhibit 1.

In this deed, Excelsior Coal and Lumber Company ("Excelsior") conveyed

14 tracts to Yellow Poplar. These tracts included a 1000 acre surface tract listed in the

deed as Tract 10 and a 3877.5 acre mineral tract listed in the deed as Tract 11. See

Exhibit 1. The evidence will show that the 1000 acre tract overlies a portion of the

3877.5 acre mineral tract.

9

Yellow Poplar did not acquire all of the minerals on the 3877.5 acre tract. In the deed, Excelsior reserved "all the oil, coal and minerals, except stone, fire clay, gas and cement rock."  Counterclaim, ¶¶ 14-15; Exhibit 1.  Thus, the deed conveyed the "stone, fire clay, gas and cement rock" to Yellow Poplar.  *Id.*

2.     The Yellow Poplar Bankruptcy in 1928.

By decree dated November 7, 1928, Yellow Poplar was adjudicated a bankrupt in Case No. B-1101 in the United States District Court for what was then the Western District of South Carolina.  Amended Complaint, ¶ 12; Counterclaim, ¶ 1.  See Exhibit 2.  Gallie Friend was appointed trustee.  Amended Complaint, ¶ 13.

The evidence will show that Gallie Friend had been an employee, officer and stockholder of Yellow Poplar.  Mr. Friend was fully familiar with the assets of the company.

In the schedules filed with the bankruptcy case, the trustee did not list Tract 11 or "stone, fire clay, gas and cement rock" as assets of Yellow Poplar.  Counterclaim, ¶ 26.  A copy of real estate schedule from the case attached as Exhibit 3.  The schedule lists tracts in Buchanan County on which Ritter held a mortgage and a 1000 acre surface tract in Buchanan County, which is Tract 10 in the Excelsior deed.  And it lists a tract in Wayne County, West Virginia, and a tract in Dickenson County, Virginia, which are not relevant here.

In the schedule, the trustee did not show the 1000 acre tract as being subject to the deed of trust in favor of Ritter.  This is significant because only the lands subject to

10

the deed of trust were conveyed to Ritter.  Amended Complaint, ¶¶ 11, 14.  In the

bankruptcy proceeding, Ritter did not challenge the schedule or contend that it had a lien

on the 1000 acre surface tract or the 3877.5 acre mineral tract.

> 3.     Tracts 10 and 11 Were Not Conveyed to Plum Creek.

Plum Creek contends that the 1000 surface acre tract (Tract 10 in the

Excelsior deed) and the 3877.5 acre mineral tract (Tract 11 in the Excelsior deed) were

conveyed to Ritter in the bankruptcy case.  Plum Creek bases its claim on catchall

language in the 1929 deed from Gallie Friend to Ritter.  See Exhibit 4.  After specifically

describing certain tracts, the deed states:

> It being the intention to embrace herein and convey hereby all
> of the tracts, pieces or parcels of land, or interests in land
> owned by Yellow Poplar Lumber Company on the
> watersheds of Levisa River and Dismal Creek and their
> tributaries in said Buchanan County, Virginia, whether herein
> above described, or referred to, or not.

*Id.*

The problem for Plum Creek is that Tracts 10 and 11 are on the waters of

Big Pawpaw Creek and Big Fox Creek, tributaries of the Russell Fork of the Big Sandy

River.  See Exhibit 1.  These tracts are not on the waters of Dismal River or the Levisa

River, which comprise a different watershed in Buchanan County.

While Plum Creek's amended complaint alleges that Tracts 10 and 11 are

on the waters of the Levisa River, Range has specifically denied this allegation.

Amended Complaint, ¶ 20; Answer, ¶ 20.  In its counterclaim, Range states that Tracts 10

and 11 were not included in the deed to Ritter.  Counterclaim, ¶ 3.  Of course, this issue
cannot be resolved on Plum Creek's 12(b)(6) motion, and, for purposes of the motion,
Range's allegations must be taken as true.

### 4.      Tract 10 Was Conveyed to Jackson.

In the bankruptcy case, the trustee conveyed Tract 10 to C. G. Jackson.
Amended Complaint, ¶ 26; see Exhibit 5.  Plum Creek asks the Court to declare this
conveyance "null" and "void."  Amended Complaint, Prayer ¶ E.  Plum Creek contends
that Tract 10 was included in the 1929 deed to Ritter and could not have been conveyed
to Jackson in 1930.  *Id.* ¶ 27.

The evidence will show that neither the parties nor the bankruptcy court
intended to convey Tract 10 to Ritter.  This is clear not only from the descriptions but
also from the chronology of events in the bankruptcy case.  The 1000 acre tract was
actually sold at auction *before* the deed to Ritter.  See documents from the bankruptcy
case attached as Exhibit 6.  The auction was held on March 25, 1929.  *Id.*  The deed to
Ritter was made six months later.  See Exhibit 4.

C. G. Jackson purchased the 1000 acre tract for $7,500.  See Exhibit 6.  The
court confirmed the sale, but Jackson refused to close.  *Id.*  Therefore, the court ordered
the tract sold a second time.  *Id.*  Again, Jackson bought the property at auction for
$3,000.  In order to avoid a suit by the trustee for the deficiency, Jackson ultimately
agreed to pay the original auction price.  *Id.*  The trustee made the deed to Ritter after the
first auction of the 1000 acres to Jackson and before the second auction.  *Id.*

Clearly, the court and the trustee would not have conducted the first auction of the 1000 acre tract if they thought that the tract was subject to the deed of trust in favor of Ritter.  And just as clearly, the court and the trustee would not have conducted a second auction of the tract if they thought they had conveyed the tract to Ritter.

The deed to Jackson was an effective conveyance of the 1000 acre tract to Jackson, just as the court and parties intended.  But the conveyance to Jackson was for surface only.  The deed did not convey the gas to Jackson.

The minerals under Tract 10 are part of Tract 11.  In the bankruptcy case, the trustee referred to Tract 10 as a surface tract.  See Exhibit 3.  And Jackson, the purchaser of the tract, referred to it as a surface tract.  See Exhibit 7.

> 5.     The Gas Under Tract 11 Was Conveyed to Big
>        Sandy.

There is no mention of Tract 11 in the bankruptcy case.  Counterclaim, ¶ 26.  Nor is there mention of any estate in the "stone, fire clay, gas and cement rock."  This is because the minerals under Tract 11 that were owned by Yellow Poplar had been conveyed to Big Sandy before the bankruptcy in 1928.  *Id.* ¶¶ 16-25.

By deed dated June 20, 1924, Yellow Poplar conveyed to Big Sandy certain tracts on the waters of Grassey Creek, Camp Branch, and Barts Lick Creek in Buchanan County and Dickenson County, being "12000 or 14000 acres, more or less."  See Exhibit 8.  The deed contained a general description of the property conveyed but stated that a

13

survey would be performed. *Id.* Following the survey, Yellow Poplar agreed to execute

a confirmatory deed. *Id.*

In addition to the 12,000 to 14,000 acres, Yellow Poplar also conveyed to

Big Sandy:

> All its rights, title or interest, whether at law or in equity, in
> and to the gas, stone, fire clay, and cement rock in, on, upon
> or under, all of the lands heretofore sold by the party of the
> first part to G.B. Long, by deed dated March 7, 1921, and
> recorded in Dickenson County Deed Book NO. 46, page 426,
> *together with* all other property rights and privileges reserved
> in said deed, to which deed special reference is here made for
> a more particular and accurate description of said reservations
> and exceptions and the descriptions of said lands.

*Id.* (emphasis added).

This conveyance consists of two parts, one being the "gas, stone, fire clay,

and cement rock" under the lands conveyed to Long by the 1921 deed and the second

being "all other property rights and privileges reserved in said deed." *Id.* Reference was

made to the Long deed "for a more particular and accurate description of said

reservations and exceptions and the descriptions of said lands." *Id.*

Following the survey, Yellow Poplar executed a confirmatory deed with a

metes and bounds description of the lands conveyed to Yellow Poplar. See deed dated

June 9, 1925, attached as Exhibit 9. The 1925 deed also confirmed the conveyance of

other estates to Big Sandy. These included the "coal, gas, stone, fire clay and cement

rock in, on upon and under all the lands in the Counties of Dickenson and Buchanan,

Virginia, heretofore sold by the party of the first part to G. B. Long by deed dated March

14

7, 1921 . . . ." *Id.*  The deed further conveyed "all other estates property and property

rights, and privileges, rights and easements excepted and reserved in said deed."  And the

deed made special reference to the Long deed "for a more particular description of said

reservations and exceptions and the descriptions of said lands." *Id.*

Finally, in the 1925 deed to Big Sandy, the parties made clear that Yellow

Poplar was conveying all the reservations and exceptions in the Long deed:

> It is the intention of this paragraph to release quit claim and
> convey by the party of the first part to the party of the second
> part any and all reservations and exceptions contained in the
> deed [to Long]. . . .

*Id.*  Again, the clear intent was to convey more than the mineral rights under the lands

conveyed to Long  The intent was to convey the mineral rights on all lands referenced in

the Long deed.

In the 1921 deed to Long, Yellow Poplar conveyed approximately 7985.11

acres to Long with the following exception or reservation:

> Therefore, said Company excepts and reserves from the
> operation of this conveyance and from all of the lands herein
> mentioned and conveyed, all of the coal, oil, gas, and other
> minerals, mining rights and easements, timber and timber
> rights, privileges and easements, and all other rights,
> privileges and easements, which are or have been reserved,
> excepted or contained in those certain instruments of
> conveyance to said Company to which special reference is
> here made for a more particular description of said
> exceptions, reservations, rights, privileges and easements, as
> follows:
>
> 1.  Deed by the Excelsior Coal & Lumber Co., Virginia Coal
> and Trust Company and Russell Fork Coal & Lumber

> Company to Yellow Poplar Lumber Co., dated January 5,
> 1906, and appearing of record in Dickenson County, Virginia,
> Deed Book NO. 25 pages 476 et. seq., and in Buchanan
> County, Virginia, Deed Book No. 30, pages 226 et seq.

See Exhibit 10.

Thus, Long got the surface, and Yellow Poplar retained the minerals described in the Excelsior deed.  In the 1924 and 1925 deeds, Yellow Poplar conveyed those minerals to Big Sandy, Range's predecessor in title.

> 6.   Courts Must Often Resort to Extrinsic Evidence to
> Determine What Is Conveyed.

In its memorandum, Plum Creek states that Virginia follows the "plain meaning" rule and that extrinsic evidence should not be considered where the language of the deed is plain and unambiguous.  Memorandum at 9.  While this is correct as a general rule, it must be qualified when it comes to descriptions.

Parties routinely employ descriptions that require the courts to resort to extrinsic evidence to determine what is conveyed.  For example, parties often use references to other grants or conveyances.  *James River & Kanawha Power Co. v. Old Dominion Iron & Steel Corp.*, 138 Va. 461, 477, 122 S.E. 344, 349 (1924).  As the Supreme Court of Virginia has explained, "the main object of the description 'is not in and of itself to identify the land sold . . . but to furnish the means of identification.'"  *Firebaugh v. Whitehead*, 263 Va. 398, 403, 559 S.E.2d 611, 615 (2002) (quoting *Harper v. Wallerstein*, 122 Va. 274, 278, 94 S.E. 781, 782 (1918)) (alterations in original).  A description is sufficient if "'with the aid of extrinsic evidence,'" the property conveyed

16

can be determined.  *Id.* (quoting *Smith v. Bailey*, 141 Va. 757, 768, 127 S.E. 89, 93

(1925)).  In *Firebaugh*, as is often the case, a surveyor was permitted to testify that the

description was sufficient to allow him to identify the property.  *Id.*

Also, courts must interpret deeds "in the light of the surrounding facts and

circumstances."  *Blair v. Rorer's Adm'r*, 135 Va. 1, 31, 116 S.E. 767, 778 (1923).

Indeed, "[t]he fundamental rule of construction in Virginia is that the purpose or intent of

a written instrument is to be determined from the language used in the light of the

circumstances under which it was written."  *Phipps v. Leftwich*, 216 Va. 706, 710, 222

S.E.2d 536, 539 (1976).

In its amended complaint, Plum Creek itself cites extrinsic evidence in

support of its claim that the property in question is on the waters of the Levisa River.

Amended Complaint, ¶ 27.  In an effort to bolster its claim, Plum Creek attaches a map

prepared by a hydrologist that it hired.  See Exhibit C to Amended Complaint.

So also Range should be permitted to call title examiners and surveyors to

support its claim.  Range should also be permitted to refer to other deeds and descriptions

and to the proceedings in the bankruptcy case.  If the Court determines that the

descriptions are ambiguous, then the parties are free to introduce any other evidence that

sheds light on their predecessors' intent.  *Kitt v. Crosby*, 277 Va. 396, 403, 672 S.E.2d

851, 855 (2009).  Where the evidence is in conflict, the issue may be presented to a jury.

*Id*. at 404, 672 S.E.2d at 856.

17

Plum Creek cites *Vicars v. First Va. Bank-Mountain Empire*, 250 Va. 103, 458 S.E.2d 293 (1995), in support of its motion, but that case actually supports Range, not Plum Creek.  In *Vicars*, the Court had to determine whether a 71.75 acre tract was included in a 1923 deed.  The 1923 deed described seven different tracts but not the 71.75 acre tract.  The deed then stated:

> all the descriptions in the above given references are made a part and embodied as a part of this conveyance, and the intention of this deed is to convey all the rights, title and interest acquired by [grantor] from the wife and heirs of Milburn Gilliam's estate.

*Id.* at 106, 458 S.E.2d 295.  The question was whether this language conveyed the 71.75 acre tract, which was part of the Milburn Gilliam estate but not part of the tracts listed in the deed.

The Supreme Court held that the language at issue "does not describe the physical property conveyed but rather involves the nature of the ownership rights, or estate, conveyed."  *Id.* at 108, 458 S.E.2d at 296.  The Court found that the deed conveyed only "one class of property," that being the land listed in the deed.  *Id.* at 107, 458 S.E.2d at 296.  The language at issue further described that class of property; it did not convey a separate or different class of property.

By contrast, the deeds from Yellow Poplar to Big Sandy describe several different categories of property.  In the 1924 deed, one category of property is the lands containing 12,000 to 14,000 acres.  See Exhibit 8.  Another category of property consists of the "gas, stone, fire clay, and cement rock" under the tracts conveyed to Long.  *Id.*

18

And a third category of property includes "all other property rights and privileges reserved in" the deed to Long. *Id.*

Likewise, in the 1925 confirmatory deed, Yellow Poplar conveyed certain tracts by metes and bounds descriptions. See Exhibit 9. Yellow Poplar also conveyed the "coal, gas, stone, fire clay and cement rock" under the tracts conveyed to Long. *Id.* And it conveyed "all other estates property and property rights, and privileges, rights and easements" that were excepted or reserved in the deed to Long. *Id.*

The separate nature of these conveyances is confirmed by the use of the term "together with" in both deeds. Yellow Poplar conveyed minerals under the Long tracts "together with" the other rights referenced in the Long deed. The breadth of this conveyance to Big Sandy is emphasized by the language explaining the intention to include "any and all reservations and exceptions" listed in the Long deed.

Unlike the deed in *Vicars*, the deeds to Big Sandy clearly describe separate rights and estates. These rights and estates include the minerals under the tracts conveyed to Long, but they also include mineral rights under lands described in the Excelsior deed.

       7.    Range's Claim Is Consistent with All the Other
             Conveyances and the Bankruptcy Proceeding.

Range's claim of ownership is consistent with all the other deeds and with the bankruptcy proceeding. At the time of the bankruptcy, Yellow Poplar owned the lands that were mortgaged to Ritter, and it owned the 1000 acre surface tract, which was

19

Tract 10 in the Excelsior deed.  But Yellow Poplar did not own Tract 11 – a mineral tract – because that tract had been conveyed to Big Sandy.

Because the mineral rights had been conveyed to Big Sandy, the bankruptcy trustee did not list Tract 11 as an asset of the estate, and he listed Tract 10 as only a surface tract.  Yellow Poplar no longer owned the mineral rights.

The deed to Ritter is consistent with Range's claim because the land conveyed to Ritter is on a different watershed.  The deed to Jackson is consistent with Range's claim because the estates conveyed to Big Sandy did not include the 1000 acre surface tract.

By contrast, Plum Creek cannot reconcile the actions of the trustee and court in the bankruptcy proceeding.  Under Plum Creek's view, the court and trustee did know what they were doing.  The court and trustee first auctioned the 1000 acre tract to Jackson, then they deeded it to Ritter, then they auctioned it again to Jackson, then they deeded it to Jackson.  Plum Creek therefore asks the Court to declare the deed to Jackson "null and void."

Plum Creek cannot explain why Ritter, a creditor in the bankruptcy case, did not protest the auctions and sales to Jackson.  Nor can Plum Creek explain why Ritter and its successors in title have sat by and allowed Jackson and his successors in title occupy the surface of the 1000 acre tract for the last 85 years.  In recognition of the futility of its claim to the surface, Plum Creek feigns generosity by stating that it is "willing to quitclaim the surface rights to the C. G. Jackson Record Owners."  Amended

20

Complaint, ¶ 32.  This offer does not result from generosity but from the obvious

weaknesses of Plum Creek's claim.  Plum Creek does not want to take on the surface

owners.  It wants to get them out of the case as soon as possible.

Range submits that the court in the bankruptcy proceeding and the trustee

knew exactly what they were doing.  They sold the Jackson tract because they did not

believe that it was subject to the Ritter mortgage.  The Jackson tract was on a different

watershed.  The court and trustee did not consider the 3877.5 acre tract to be part of the

estate because it had been conveyed to Big Sandy.

IV.   CONCLUSION

Range's counterclaim raises important title issues that cannot be resolved

on a 12(b)(6) motion.  The counterclaim should be allowed to mature in the usual way,

and the motion to dismiss should be denied.

RANGE RESOURCES-PINE MOUNTAIN, INC.

By Counsel

Wade W. Massie
 VSB No. 16616
Mark L. Esposito
 VSB No. 23005
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621

By  */s/ Wade W. Massie*
      Wade W. Massie

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

Francis H. Casola, Esq.
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
P.O. Box 14125
Roanoke, VA  24038-4125
Counsel for Plaintiff

Cameron S. Bell, Esq.
Andrew M. Hanson, Esq.
Penn, Stuart & Eskridge
P.O. Box 2288
Abingdon, VA  24212
Counsel for Heartwood Forestland Fund IV, L.P.

William E. Bradshaw, Esq.
William E. Bradshaw, P.C.
P.O. Box 267
Big Stone Gap, VA  24219
Counsel for Chesapeake Appalachia, LLC

and that I mailed by United States Postal Service the document to the following persons:

Terrence Shea Cook, Esq.
T. Shea Cook, P.C.
P.O. Box 507
Richlands, VA  24641
Counsel for Plaintiff

Wayne T. Horne, Esq.
1062 Walnut Street, #2
Grundy, Virginia  24614
Guardian Ad Litem

R. Lucas Hobbs, Esq.
Elliott Lawson & Minor, P.C.
110 Piedmont Avenue, Suite 300
Bristol, VA  24201
Guardian Ad Litem

Gregory D. Habeeb, Esq.
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA  24022-0013
Counsel for Edwin F. Legard, Jr.,
Elizabeth Anne Cox, Trustee of
 the Elizabeth Anne Cox Trust, and
William B. Baker, Jr., Trustee of
 the Emily P. Baker Generation Skipping Trust

Thomas L. Pruitt, Esq.
1080 Walnut Street
P.O. Box 1080
Grundy, VA  24614
Counsel for Matthew Trivett and Michael Trivett

James W. Childress, Esq.
P.O. Box 1259
Grundy, VA  24614
Counsel for Marlene McCall and Donna Vest

Charles Bartlett
432 East Main Street, Suite G
Abingdon, VA 24210

Lydia V. Newberry
14810 West Calavar Road
Surprise, AZ 85379

23

Donald A. McGlothlin, Jr.
113 East Main Street
Lebanon, VA 24266

Mary L. McGlothlin Burton
1010 North Martintown Road
McCormick, SC 29835

Leah Anne McGlothlin
2859 Kennel Gap Road
Oakwood, VA 24631

Kevin T. McGlothlin
2285 Clifton Farm Road
Honaker, VA 24260

Karen Stiltner
933 Revere Road
Galax, VA 24333

Rita C. Coleman
P.O. Box 175
Vansant, VA 24656

Betty Sue Sutherland
280 Glade Hill Drive
Lebanon, VA 24266

Ruby Jean Hill
1074 Bear Branch Road
Vansant, VA 24656

Danny Carl Owens
9970 Lovers Gap Road
Haysi, VA 24256

Rebecca L. Bowman Rakes
220 Republican Church Road
Ferrum, VA 24088

Cindy K. Bowman
3625 Gent Branch Road
Vansant, VA 24656

Jody B. Baldwin
341 Pennsylvania Avenue
Salem, VA 24153

Jessica Baldwin
341 Pennsylvania Avenue
Salem, VA 24153

Bonnie Hunt
c/o Michael Planck
2642 Three Mile Road
Flemingsburg, KY 41041

Rita Simmons
2808 60th Avenue W, #1505
Bradenton, FL 34207

Douglas Coleman
2117 Cranesnest Road
Vansant, VA 24656

Clinton Coleman
2532 Old Greenbrier Road
Haysi, VA 24256

Eugene Coleman
1408 JWB Hollow Road
Vansant, VA 24656

Barbara Charles
1015 Apple Jack Drive
Haysi, VA 24256

Susie Charles
1064 Ironwood Road
Vansant, VA 24656

Ira Jessie Coleman
933 Revere Road
Vansant, VA 24656

Lena Everman
c/o Dan Planck
1202 Piedmont Drive
Fairborn, OH  45324

Irving Coleman
5237 Springdale Avenue
Charlotte, NC 28277

Barbara Ellen Coleman
5848 Wilgrove Mint Hill Road
Charlotte, NC  28277

Regina Lynn Lewis
8029 Wilson Woods Drive
Charlotte, NC  28227

Jerry L. Coleman
2614 Cranesnest Road
Vansant, VA  24656

Barbara Ann Coleman
2614 Cranesnest Road
Vansant, VA  24656

_____ */s/ Wade W. Massie*_____
Wade W. Massie